## RAXSDALE et al. v. DAVIS et al.
### No. 5562.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1938.

Rehearing Denied Jan. 28, 1938.

T. A. Carter, of Alexandria, for appellants.

Isaac Wahlder, of Alexandria, for appellees.

DREW, Judge.

Plaintiffs instituted this suit to recover from defendants the sum of $500, alleged to have been caused by a building owned by them having been destroyed by fire. For a cause of action, they allege the following:

"1. That Mrs. Cecile Normand Davis and Mrs. Celia Totdenbier Normand, citizens and residents of Rapides parish, Louisiana, are justly, truly and legally indebted unto your petitioners in the just and full sum of $500.00, in the way and manner and for this to-wit: that your petitioners were the owners of a certain wooden frame, sheet iron building located at the corner of Third and Hamilton streets in Alexandria, Rapides parish, Louisiana, and that several years ago Mauril E. Normand asked your petitioners' permission to permit him to store hay in said building for the period of that year, which was 1934, and your petitioners agreed for him to store hay in said building for that year upon him keeping the building constantly insured against loss by fire in the sum of $500.00, which amount would practically represent the value of the building. That at the expiration of the said year all of the said hay was moved out of said building and the agreement terminated, and that during the year 1935, without the knowledge or consent of any of your petitioners, the said Mauril E. Normand proceeded to store hay in said building without the consent or authority of any of your petitioners to the storing of the hay; and that the said hay was stored in there by the said Mauril E. Normand and that hay being inflammable, that said hay caught fire, either by combustion or carelessness on the part of the said Mauril E. Normand's employees, and that said building was burned on Wednesday, the 18th day of December, 1935.

"2. Your petitioners show that they are engaged in other businesses out of the city of Alexandria and knew nothing of the storing of said Hay in said building after said building was burned, and that after the burning of said building, your petitioners took the matter up with the said Mauril E. Normand and that he promised to adjust the matter with your petitioners, but that before said adjustment was consummated, Mauril E. Normand died, leaving a will and naming his brother, Clayton G. Normand, as executor of said will; all of which will more fully appear by reference to Probate Book Docket No. 4389 of the District Court of the Ninth Judicial District. Your petitioners show that they immediately made claim against the Succession of the said Clayton G. Normand, who was executor of the will, but he paid no attention whatever to the claim and that finally Mrs. Cecile Normand Davis and Mrs. Celia Totdenbier Normand acquired the interests of all the other heirs and had themselves recognized and put in possession of all the assets left by the deceased, Mauril E. Normand, and in said judgment of recognition and possession, they assumed all debts against the succession of Mauril E. Normand, as will more fully appear by reference to Probate Docket No. 4389, Succession of Mauril E. Normand, which

record is hereto annexed, incorporated herein, and made a part hereof for greater certainty.

"3. Your petitioners show that they have made demands upon the said Mrs. Cecile Normand Davis and Mrs. Celia Totdenbier Normand and that they have refused and neglected to settle with your petitioners for the loss of said building.

"4. Your petitioners show that at the time said building burned, it was not insured, and that the building was a total loss to your petitioners, and that your petitioners under no circumstances would ever have permitted hay to be stored in said building without first having had the same insured for the full amount of said building, but as above stated, said hay was stored in said building without the knowledge or consent of your petitioners, and that for the reasons above set forth, your petitioners are entitled to recover the sum of $500.00, together with legal interest thereon from judicial demand until paid, which represents the actual value of said building that was destroyed by fire, the said fire originating in said building in said hay, and that said building was a sheet iron one and would not have burned under any other conditions other than being filled with inflammables."

Defendants interposed exceptions of no right or cause of action, which were overruled. By answer they reurge the exceptions and specifically deny each and every allegation of plaintiffs' petition.

On these issues the case was tried below, resulting in judgment rejecting plaintiffs' demands at their cost, and they are now prosecuting this appeal.

We will refrain from discussing the exceptions of no right or cause of action, due to the fact that we find the case on its merits to be with defendants, and prefer to finally dispose of the case.

The only evidence offered was by the plaintiffs. Defendants offered none. Since the testimony is so short, we will cover it in full. The building that burned was owned by plaintiffs. It was a wooden, frame structure, with sheet iron walls and roof and a concrete floor. For all useful purposes, it was destroyed by the fire and the damage was at least $500, the amount sued for. S. J. Raxsdale had complete charge of the building and was the only person authorized to rent it. He testified he did not rent the building to M. E Normand and that he did not know Normand was using it until after the fire; and that his information came from Mr. Normand a day or two after the building was destroyed. He testified that at that time Normand told him he had put some hay in the building. He further testified:

"Q. After this fire, did you see Mr. Normand with reference to the building?

"A. I did, seven days after the fire * * * (interrupted).

"Q. I asked you if you saw Mr. Normand after the fire?

"A. Yes, sir.

"Q. About how long after the fire was it before you saw him?

"A. Oh, I imagine several days, I came from the plantation about two days afterward, maybe the next day.

"Q. Were you in company with anyone at the time you saw him?

"A. No, I met Mr. Normand in front of the Penny store on Third street.

"Q. Did you have one or more than one conversation with him with reference to this?

"A. Only one.

"Q. Do you know Mr. Crooks, Hardy Crooks?

"A. Yes, I know him; oh, I had a previous one, that what you mean?

"Q. Where was the conversation you had. * * * I will ask you this question, did you ever have a conversation with Mr. M. E. Normand about the destruction of this building by fire in the presence of Mr. Hardy Crooks?

"A. Yes, sir, previous to that. * * *

"A. Yes, sir.

"Q. Where was that conversation?

"A. In front of the power plant.

"Q. How long was that after the fire?

"A. This was previous to the fire.

"Q. Well, at the conversation after the fire with Mr. Normand, what statement did Mr. Normand make to you with reference to this building burning?

"A. I met Mr. Normand at, you might say on Third street in front of Penny's and I said, 'Mr. Normand, how come you to put that stuff in that building and burn it down?' I says, 'You understand this is your building you have lost, it's not mine, you put this in here without my knowledge and consent.'

"Q. What reply, if any, did he make to that?

"A. Mr. Normand said that he had lost quite a lot of money and hay and stuff like that and he said that * * * I says, 'you know there is no insurance on this building', and he answered me there was insurance on it, that the paper so stated, and I said, 'well, you are mistaken, I have no policy on that, there was a mistake somewhere'.

"Q. What did he say with reference to paying for the building?

"A. Well, he said he would restore the building back, that he would put the building back, that it was his fault, that is the very words he said.

"Q. That was after the fire?

"A. Yes, sir, just about a day.

"Q. Then, as a matter of fact, as far as you knew, your building was standing there empty?

"A. Yes, sir.

"Q. Had you rented the building or were you about to rent the building when the fire occurred?

"A. Yes, I was negotiating with the Louisiana Seed Company, they were negotiating about putting a store there and while it was still pending, it had never been decided."

Mr. Normand died soon after this conversation took place. It is not disputed that the building contained ten or fifteen tons of hay at the time it was burned. Mr. Jack Raxsdale testified that it would have been almost impossible for it to burn without considerable combustible material being stored in it.

The above are the entire facts proved at the trial below.

The lower court rejected plaintiffs' demands for the reason that plaintiffs failed to prove their allegations by competent and sufficient evidence, as required by Act No. 11 of 1926, which provides when parol evidence against a deceased person is admissible. The act reads as follows:

"Section 1. Be it enacted by the Legislature of Louisiana, That Parol evidence shall be incompetent and inadmissible to prove any debt or liability upon the part of a party deceased, if a suit upon the asserted indebtedness or liability shall have been brought more than twelve (12) months after the death of the deceased.

"Section 2. That parol evidence shall be incompetent and inadmissible to prove any debt or liability upon the part of a party deceased, if a suit upon the asserted indebtedness or liability shall have been brought within a delay of twelve (12) months after the death of the deceased, unless it consists of the testimony of at least one credible witness of good moral character, besides the plaintiff; or unless it be to corroborate a written acknowledgment or a promise to pay, signed by the debtor."

The lower court correctly found that the only evidence in the record tending to show the liability of N. E. Normand, deceased, was that of S. J. Raxsdale. There was no corroboration by any other witness or written evidence.

Plaintiffs contend that the act is only applicable to actions arising out of contracts and has no application to actions in tort. The argument in support of that contention is very plausible, however, no authorities are cited to sustain it. However, we will pretermit a ruling thereon in this case as it is not necessary to a decision.

Plaintiffs' case must fail for want of proof to show any connection between the defendants herein and M. E. Normand, who is alleged to have caused the damage sued for. There is no testimony to show them to be liable for the torts alleged to have been committed by M. E. Normand. In article 2 of their petition, quoted above, plaintiffs alleged a state of facts, if proven, would make them liable if Normand was liable, but the record is barren of any proof to substantiate their allegations, and in the answer the allegations are denied specifically by defendants. In their brief defendants urge this as a defense and state the lower court commented on the fact in its oral opinion. Plaintiffs make no reference to it in their brief and no excuse offered for failure to make the proof. Counsel for plaintiffs does not claim the testimony to support the allegations was omitted through inadvertence or otherwise. He simply ignores that part of defendants' defense. There are instances in which, on proper showing, we have remanded cases to allow the introduction of necessary evidence where same was inadvertently omitted and was

necessary to a just decision in the case. No such showing has been made here and we would not be justified in remanding the case.

The judgment of the lower court is correct and is affirmed, with costs.